IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **SIGNET MARITIME CORPORATION** | § § § § § § § § § § § § § § § § § | |
| | | CIVIL ACTION NO. 2:20-cv-00180 |
| Plaintiff, | | |
| | | Admiralty Fed. R. Civ. P. 9(h) |
| V. | | |
| **ANGLO-EASTERN SHIP MANAGEMENT PTE LTD; BOSKALIS OFFSHORE HEAVY MARINE TRANSPORT B.V.; MIGHTY SERVANT 3 B.V., M/V MIGHTY SERVANT 3,** her engines, tackle, gear, apparel, etc., *in rem* | | |
| Defendants. | | |

# PLAINTIFF SIGNET MARITIME CORPORATION'S FIRST AMENDED COMPLAINT

Plaintiff Signet Maritime Corporation ("Signet") files this First Amended Complaint against Anglo-Eastern Ship Management Pte Ltd. *in personam* ("Anglo-Eastern"), Boskalis Offshore Heavy Marine Transport B.V. *in personam* ("Boskalis"), Mighty Servant 3 B.V. *in personam* ("MS3BV"), and the M/V MIGHTY SERVANT 3, her engines, tackle, etc., *in rem* (the "MS3"), (collectively "Defendants"), respectfully showing as follows:

## I. JURISDICTION AND VENUE

1.1     This is a cause of action for a maritime tort and a maritime lien within the admiralty and maritime jurisdiction of the United States and this Honorable Court in accordance with Section 1333 of Title 28 of the United States Code, Rule 9(h) of the Federal Rules of Civil Procedure, and Rule B and Rule C of the Supplemental Rules for Certain Admiralty & Maritime

1

Claims. The general maritime law of the United States is thus invoked, because, as will more fully appear, this is a cause of action for enforcement of a maritime lien, negligence, and maritime tort under the general maritime law.

1.2     Venue is proper in this Court under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Texas and a substantial part of the property that is the subject of the action is situated in the Southern District of Texas.

## II. Parties

2.1     Signet is a domestic corporation duly organized and existing under and by virtue of the laws of the State of Texas with its principal office located in Harris County, Texas. Signet owns the tug SIGNET POLARIS.

2.2     Anglo-Eastern is a foreign corporation or other foreign business entity with an office and a principal place of business located at Kingston International Center, 17th Floor, 19 Wang Chiu Road, Kowloon Bay, Kowloon, Hong Kong, China. At all relevant times, Anglo-Eastern was the employer of the MS3's crew and officers. Anglo-Eastern has substantial and/or continuous and systematic activities within the United States, including the Southern District of Texas, and its negligence directly caused Signet's damages in this District. Anglo-Eastern does not have a regular place of business or a registered agent for service of process in Texas or this District. Anglo-Eastern may be served with process:

  (a)     through the Texas Secretary of State because this suit arises from the non-resident's business in Texas; or

(b)   pursuant to the Hague convention by mailing two copies of Request for Service Form together with two copies of the documents to be served to the Hong Kong, China, Chief Secretary for Administration:

Chief Secretary for Administration
Hong Kong Special Administrative Region Government
Room 321, 3/F, East Wing
Central Government Offices
2 Tim Mei Avenue
Admiralty
Hong Kong, China
Email: cso@cso.gov.hk

2.3   Boskalis is a foreign corporation or other foreign business entity with an office and a principal place of business located at Rosmolenweg 20, 3356 LK Pependrecht, ZUID-HOLLAND, Netherlands. Boskalis is and was at all relevant times the operator of the MS3. Boskalis has substantial and/or continuous and systematic activities within the United States, including the Southern District of Texas, and its negligence directly caused Signet's damages in this District. Boskalis does not have a regular place of business or a registered agent for service of process in Texas or this District. Boskalis may be served with process:

(a)   through the Texas Secretary of State because this suit arises from the non-resident's business in Texas; or

(b)   pursuant to the Hague Convention by mailing two copies of Request for Service Form together with two copies of the documents to be served to the Netherlands Central Authority:

De Officier van Justitie
Postbus 20302
2500 EH THE HAGUE
Netherlands
Tel.: (0)88 699-1300
Email: serviceconvention@om.nl

3

2.4  MS3BV is a foreign corporation or other foreign business entity with an office and a principal place of business located at Rosmolenweg 20, 3356 LK Pependrecht, ZUID-HOLLAND, Netherlands. MS3BV is and was at all relevant times the owner of the MS3. MS3BV has substantial and/or continuous and systematic activities with the United States, including the Southern District of Texas, and its negligence directly caused Signet's damages in this District. MS3BV does not have a regular place of business or a registered agent for service of process in Texas or this District. MS3BV may be served with process:

(a)  through the Texas Secretary of State because this suit arises from the non-resident's business in Texas; or

(b)  pursuant to the Hague convention by mailing two copies of Request for Service Form together with two copies of the documents to be served to the Netherlands Central Authority:

De Officier van Justitie
Postbus 20302
2500 EH THE HAGUE
Netherlands
Tel.: (0)88 699-1300
Email: serviceconvention@om.nl

2.5  The MS3, IMO No. 8130899, is a Curacao-flagged heavy lift vessel. A verified statement of right or interest by and on behalf of owners of the MS3 is expected pursuant to a Letter of Undertaking provided in connection with this matter.

### III. FACTS

3.1  On or around May 27, 2020, the MS3 passed inbound through the Port Aransas Jetties and was proceeding towards the Gulf Coast Growth Ventures dock in or near Portland, Texas, under orders to unload cargo. At all relevant times, the MS3 was within the navigable

waters of the Unites States of America and within the jurisdiction of the Southern District of Texas, Corpus Christi Division.

3.2     On or around May 27, 2020, before passing through the Port Aransas Jetties, the MS3 took on one or more compulsory pilots.

3.3     During the inshore transit, at all times material to this claim, the MS3 was under compulsory pilot navigation, but remained under the control, operation, and management of Boskalis and Anglo-Eastern.

3.4     After taking on the pilot(s), Defendants failed to follow their own procedures for the master/pilot exchange, during which key information concerning the transit and the MS3's handling characteristics should have been exchanged.  Defendants failed to follow their own procedures both as to the material exchanged and the procedures for exchanging those materials.

3.5     During the MS3's inshore transit, near the Moda Ingleside Energy Center in Ingleside, Texas, the MS3 met three Signet tugs, the SIGNET POLARIS, the SIGNET ARCTURUS, and the SIGNET AMERICA (the Signet Tugs), which were to assist the MS3 in berthing at Gulf Coast Growth Ventures.

3.6     While assisting the MS3, the Signet Tugs were under the direction and orders of Defendants, including, without limitation, through one or more of the compulsory pilots on board the MS3.

3.7     When the MS3 met the Signet Tugs near the Moda Ingleside Energy Center, the MS3, through one or more of its compulsory pilots, instructed the SIGNET POLARIS and SIGNET AMERICA to shadow the MS3 on the MS3's port and starboard sides as the MS3 proceeded to its berth at Gulf Coast Growth Ventures.  The SIGNET AMERICA shadowed the MS3 on the ship's starboard side and the SIGNET POLARIS shadowed the MS3 on the ship's

port side. The SIGNET ARCTURUS made up to the MS3's stern as the MS3, through one or more of its compulsory pilots, instructed.

3.8     Before meeting with the Signet Tugs, during the inshore transit, one or more pilots on board the MS3 found the MS3 to steer in a "sluggish" manner and experienced one or more instances in which the MS3 "made a run" toward the bank during a turn.  Neither the pilots, Defendants, nor anyone on board the MS3 advised the Signet Tugs of these issues at any time before the incident made the basis of this suit.  At no time during the inshore transit did the pilots or Defendants take the time to run lines to the Signet Tugs on the starboard and port sides of the MS3, to provide better control of the MS3.

3.9     After meeting the Signet Tugs, on the approach before the turning basin across from Gulf Coast Growth Ventures, while engaged in making a port turn, the MS3 made what one or more of the pilots later referred to as a "hard run to port."

3.10    At the time, the MS3 was traveling at an excessive speed.  Due to the MS3's excessive speed, lack of lines to the Signet Tugs, and steering errors, the MS3 left the navigable portion of the channel and/or came too close to the green side bank, which was then on the MS3's port side.  The MS3 was traveling well in excess of the speed called for in the MS3's own passage plan.  Significantly, the officers and crew of the MS3 failed to provide the pilots with the passage plan and never notified the pilots of the passage plan's specifications regarding speed.

3.11    During the turn in question, the SIGNET POLARIS, which was on the port side of the MS3, notified the MS3 that the SIGNET POLARIS was being forced into shallow water.

3.12    Prior to this turn, neither the MS3 nor the pilots on board instructed the Signet Tugs to attempt to alter the MS3's course.

6

3.13    During this turn, the MS3, through its pilot(s), officers, and/or crew, caused the ship to leave the channel and/or come too close to the green side bank, and in an attempt to correct this error, ordered the SIGNET POLARIS to push on the port bow of the MS3.  The SIGNET POLARIS executed this maneuver as instructed.  This maneuver was an attempt to push the bow of the MS3 away from the port bank.

3.14    During this turn, the MS3, through its pilot(s), also ordered the SIGNET ARCTURUS to pull on the MS3's stern.  The SIGNET ARCTURUS executed this maneuver as instructed.  This maneuver was an attempt to correct the MS3's course.

3.15    During this turn, the MS3 engaged one or more of its bow thrusters.  This action was to an attempt to push the bow of the MS3 away from the port bank.

3.16    None of these actions, together or separately, sufficiently corrected the course of the MS3.  Because there were no lines attached to the starboard Signet Tug, it could not be utilized to assist.  These and other acts and omissions attributable to Defendants closed the only escape route available to the SIGNET POLARIS.

3.17    As a result, the MS3 forced the SIGNET POLARIS to ground in shallow water on the port side of the MS3.

3.18    While the SIGNET POLARIS was grounded and stationary, the MS3 also grounded but continued to proceed forward, alliding with the hull of the SIGNET POLARIS until the overlaying deck of the MS3 struck and ultimately hooked onto the SIGNET POLARIS.

3.19    The MS3 then dragged the SIGNET POLARIS across the bank between markers 23 and 25, as the MS3 proceeded to its berth at Gulf Coast Growth Ventures.

3.20    The SIGNET POLARIS requested that the MS3 berth starboard side alongside, but the MS3 refused to do so.

3.21    The SIGNET POLARIS sustained substantial damage as a result of this incident, including, without limitation, substantial damage to its hull and port thruster drive. The damage was so severe that the SIGNET POLARIS had to be dry-docked and will be out of service for an extended period.

3.22    At all material times the Signet Tugs followed the instructions given by the MS3's pilots, officers, and/or crew.

### IV. Causes of Action

4.1    Each of the Defendants are liable and accountable for Signet's damages in that such damages resulted from and were caused by negligent acts and/or omissions of Defendants, their officers, crew, agents, representatives, and/or employees.  These negligent acts and/or omissions include, without limitation, the following;

(a)    failing to use reasonable care in preventing the collision;

(b)    failing to use reasonable care in limiting the severity of the collision;

(c)    failing to warn the Signet tugs, including the SIGNET POLARIS, of the MS3's handling characteristics and tendencies to "make runs" during turns;

(d)    providing instructions, or failing to object to or override instructions, that resulted in the SIGNET POLARIS being placed in jeopardy and struck;

(e)    failing to attach lines to all of the Signet Tugs to aid in the steering of the MS3;

(f)    traveling at an excessive speed;

(g)    traveling outside the navigable channel and/or too close to the bank;

(h)    forcing the SIGNET POLARIS into shallow water;

(i)    forcing the SIGNET POLARIS to ground;

(j)    failing to move away from the SIGNET POLARIS;

(k) continuing to drag the SIGNET POLARIS through shallow water after the collision;

(l) alliding with the SIGNET POLARIS after the SIGNET POLARIS was grounded and stationary. Signet therefor invokes the *Oregon* Rule. *See The Oregon*, 158 U.S. 186, 197 (1895);

(m) failing to exercise reasonable care in monitoring the surrounding conditions;

(n) failing to exercise reasonable care in compensating for the surrounding conditions;

(o) failing to maintain a safe speed;

(p) failing to keep a proper lookout;

(q) violating accepted rules and regulations for preventing collisions, including but not limited to maritime Navigation Rules of the Road, and other violations and breaches of proper navigation and good seamanship techniques, rules, standards, customs and practices. Signet therefor invokes the *Pennsylvania* Rule. *See The Pennsylvania*, 86 U.S. 125 (1873);

(r) failing to follow, or require and/or ensure the following of, their own procedures, including, without limitation, their procedures relating to the master/pilot exchange and their procedures regarding the appropriate speed during the relevant portion of the transit;

(s) failing to intervene, override, or sufficiently assist the pilot(s) even though Defendants knew, or should have known, that the pilot(s) were not safely conning the MS3.

4.2     Each of the foregoing acts or omissions were committed by each of the Defendants, either directly or through their officers, crew, agents, or employees, and each of the foregoing acts or omissions constitute negligence that proximately caused the incident and Signet's damages.  Each of the Defendants is liable for each of these acts or omissions, either directly or through the doctrine of *respondeat superior.*

4.3     Signet invokes the doctrine of *res ipsa64230*

*loquitor* because the character of the incident was such that it would not have happened in the absence of negligence, and the instrumentality causing the occurrence exclusively was within Defendants' control.

## V. Damages

5.1     Each of the Defendants' acts or omissions was a direct and proximate cause of the collision, and of actual, incidental, and consequential damages to Signet.  Those damages include, but are not limited to, physical damage to the SIGNET POLARIS, survey/inspection costs, incident response costs, overhead, pollution response costs, governmental penalties, repair costs, replacement costs, loss of use, business interruption, and loss of profits.  At this time, the repair costs alone will likely exceed $2,000,000. and the loss of use will likely exceed $3,000,000. All of these damages were proximately caused by each of the Defendants' negligence.  At all material times, SIGNET mitigated its damages in a commercially reasonable manner.

## VI. Conditions Precedent

6.1     Signet satisfied all necessary conditions precedent prior to bringing this suit.

## VII. Prayer for Relief

7.1     WHEREFORE, Signet respectfully prays that Defendants be served with a copy

of this First Amended Complaint, that Defendants be cited to appear and answer in this cause, that Signet be awarded judgment over and against Defendants for the full amount of its damages, including pre-judgment and post-judgment interest and court costs, and that Signet be awarded all other such relief, in equity, in law, or in admiralty, to which it may show itself to be justly entitled.

Respectfully submitted,

/s/Jack C. Partridge
Jack C. Partridge, Attorney in Charge
Federal I.D. No. 10470
1300 Frost Bank Plaza
802 N. Carancahua
Corpus Christi, Texas 78470
(361) 884-8808
(361) 884-7261 Facsimile
**ATTORNEY FOR PLAINTIFF,
SIGNET MARITIME CORPORATION**

**OF COUNSEL:**

**ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.**

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on July 20, 2020, in accordance with the Federal Rules of Civil Procedure, the foregoing was served to the following counsel by the means indicated.

**VIA CMRRR AND EMAIL**
Dabney Welsh Pettus
WELDER LESHIN LLP
800 North Shoreline Blvd.
Suite 300, North Tower
Corpus Christi, Texas 78401
dpettus@welderleshin.com

/s/ Jack C. Partridge
Of ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

64230:45126455